

SIDLEY AUSTIN LLP
1501 K STREET, N.W.
WASHINGTON, D.C. 20005
+1 202 736 8000
+1 202 736 8711 FAX

AMERICA • ASIA PACIFIC • EUROPE

EMCARTHUR@SIDLEY.COM
+1 202 736 8018

September 18, 2023

By CM/ECF

Mark J. Langer
Clerk of Court
United States Court of Appeals
  for the District of Columbia Circuit
E. Barrett Prettyman U.S. Courthouse
333 Constitution Avenue, N.W.
Washington, D.C. 20001

      Re:    *Natural Resources Defense Council v. NHTSA*, No. 22-1080
            (consolidated with Nos. 22-1144 and 22-1145)

Dear Mr. Langer:

      At oral argument, Chief Judge Srinivasan asked whether the original version of the prohibitions now codified at 49 U.S.C. § 32902(h) applied only when NHTSA was amending fuel-economy standards. As the attached sections of the 1988 U.S. Code show, they did not. Unlike in today's version of the statute, the prohibitions that now appear in subsection (h) originally appeared in two separate provisions: 15 U.S.C. § 2013(g)(2)(B) and 15 U.S.C. § 2002(e). Section 2013(g)(2)(B) made the prohibitions applicable whenever NHTSA was "carrying out section 2002(a)(4) and (f)," and those sections were indeed amendment provisions. But section 2002(e)—the predecessor to today's subsection (f)—made the prohibitions applicable "for purposes of this subsection." As a result, then as now, whenever NHTSA was setting new standards or amended standards at the maximum feasible level, it was forbidden to consider the prohibited compliance flexibilities when assessing whether the standards were technologically feasible and economically practicable.

      Thus, subsection (h) and its predecessors have always forbidden NHTSA to include alternative-fuel vehicles in the modeling it uses to assess the feasibility and practicability of its standards. Indeed, that is how NHTSA complies with subsection (h) for the electric vehicles that even it concedes it may not consider—by excluding from the model the electric vehicles it projects automakers will produce as a means of complying with the standards during the standard-setting years. *See* JA943

# SIDLEY

Page 2

(explaining how NHTSA applies this constraint in its standard-setting analysis but lifts it for purposes of preparing its environmental impact statement); *see also* JA902, JA1062 n.760. NHTSA recognizes that if it included those electric vehicles in its modeling, it would be considering their fuel economy in carrying out its duty under subsection (f) to consider technological feasibility and economic practicability, and would thus run afoul of subsection (h). The same logic applies to the electric vehicles that NHTSA improperly considered in this rulemaking. By including those vehicles in the modeled fleet that NHTSA uses to assess the technological feasibility and economic practicability of its standards, NHTSA necessarily considered their fuel economy in carrying out subsection (f), and therefore violated subsection (h).

Respectfully submitted,

/s/ Eric D. McArthur
Eric D. McArthur
Kathleen M. Mueller
Peter A. Bruland
Sidley Austin LLP
1501 K Street, N.W.
Washington, D.C. 20005
(202) 736-8000
emcarthur@sidley.com

*Counsel for Petitioner
American Fuel &
Petrochemical Manufacturers*

**CERTIFICATE OF SERVICE**

I certify that on September 18, 2023, I electronically filed the foregoing letter with the Clerk of Court using the CM/ECF system, which will send notice to all registered CM/ECF users.

/s/ Eric D. McArthur

**Attachment 1:**

**15 U.S.C. § 2002 (1988)**

USCA Case #22-1080    Document #2017651    Filed: 09/18/2023    Page 5 of 14

primarily for use in the transportation of not more than 10 individuals.

(3) The term "automobile capable of off-highway operation" means any automobile which the Secretary determines by rule—

(A) has a significant feature (other than 4-wheel drive) which is designed to equip such automobile for off-highway operation, and

(B) either—

(i) is a 4-wheel drive automobile, or

(ii) is rated at more than 6,000 pounds gross vehicle weight.

(4) The term "average fuel economy" means average fuel economy, as determined under section 2003 of this title.

(5) The term "fuel" means gasoline and diesel oil. The Secretary may, by rule, include any other liquid fuel or any gaseous fuel within the meaning of the term "fuel" if he determines that such inclusion is consistent with the need of the Nation to conserve energy.

(6) The term "fuel economy" means the average number of miles traveled by an automobile per gallon of gasoline (or equivalent amount of other fuel) consumed, as determined by the EPA Administrator in accordance with procedures established under section 2003(d) of this title.

(7) The term "average fuel economy standard" means a performance standard which specifies a minimum level of average fuel economy which is applicable to a manufacturer in a model year.

(8) The term "manufacturer" means any person engaged in the business of manufacturing automobiles. The Secretary shall prescribe rules for determining, in cases where more than one person is the manufacturer of an automobile, which person is to be treated as the manufacturer of such automobile for purposes of this subchapter. Such term also includes any predecessor or successor of such a manufacturer to the extent provided under rules which the Secretary shall prescribe.

(9) The term "manufacture" (except for purposes of section 2002(c) of this title) means to produce or assemble in the customs territory of the United States, or to import.

(10) The term "import" means to import into the customs territory of the United States.

(11) The term "model type" means a particular class of automobile as determined, by rule, by the EPA Administrator, after consultation and coordination with the Secretary.

(12) The term "model year", with reference to any specific calendar year, means a manufacturer's annual production period (as determined by the EPA Administrator) which includes January 1 of such calendar year. If a manufacturer has no annual production period, the term "model year" means the calendar year.

(13) The term "Secretary" means the Secretary of Transportation.

(14) The term "EPA Administrator" means the Administrator of the Environmental Protection Agency.

(Pub. L. 92-513, title V, § 501, as added Pub. L. 94-163, title III, § 301, Dec. 22, 1975, 89 Stat. 901, and amended Pub. L. 96-425, §§ 4(c)(1), 8(b), Oct. 10, 1980, 94 Stat. 1824, 1828; Pub. L. 100-494, § 6(b), Oct. 14, 1988, 102 Stat. 2452.)

CODIFICATION

"This subchapter", referred to in text preceding par. (1) and in pars. (1)(B)(ii) and (8), was in the original "this part", meaning former part A, "Automotive Fuel Economy", of this subchapter, which designation, the only part designation appearing in the subchapter, was struck out by section 8(a)(3) of Pub. L. 96-425.

AMENDMENTS

1988—Par. (1). Pub. L. 100-494 inserted ", or by alcohol or natural gas," after first reference to "fuel".

1980—Par. (8). Pub. L. 96-425, § 4(c)(1), provided that for purposes of this subchapter the term "manufacturer" would also include any predecessor or successor of a manufacturer to the extent provided under rules prescribed by the Secretary.

Par. (9). Pub. L. 96-425, § 8(b), substituted "manufacture" for "manufacturer".

EFFECTIVE DATE OF 1980 AMENDMENT

Section 9 of Pub. L. 96-425 provided that: "Except as otherwise provided in this Act [see Effective Date of 1980 Amendment note set out under section 2002 of this title], the amendments made by this Act [amending sections 1901, 2001, 2002(b), (c), (d), (g)-(k), 2003, 2005, 2008(b)(1)(A) and 2012 of this title and enacting provisions set out as notes under sections 1901, 2001, and 2002 of this title] shall take effect on the date of enactment of this Act [Oct. 10, 1980]."

CONGRESSIONAL DECLARATION OF PURPOSE OF 1980 AMENDMENT

Section 2 of Pub. L. 96-425 provided that: "It is the purpose of this Act [amending sections 1901, 2001, 2002, 2003, 2005, 2007, 2008 and 2012 of this title and enacting provisions set out as notes under sections 1901, 2001, and 2002 of this title]—

"(1) to amend certain Federal automobile fuel economy requirements to improve fuel efficiency, and thereby facilitate conservation of petroleum and reduce petroleum imports, and

"(2) to encourage full employment in the domestic automobile manufacturing sector."

SECTION REFERRED TO IN OTHER SECTIONS

This section is referred to in sections 2002, 2004, 2006, 2012, 2021 of this title; title 26 section 4064; title 42 section 6291.

§ 2002. Average fuel economy standards

(a) Standards for passenger vehicles manufactured after 1977; review of standards; report to Congress; standards for passenger automobiles manufactured from 1981 through 1984; amendment of standards

(1) Except as otherwise provided in paragraph (4) or in subsection (c) or (d) of this section, the average fuel economy for passenger automobiles manufactured by any manufacturer in any model year after model year 1977 shall not be less than the number of miles per gallon established for such model year under the following table:

| Model year: | Average fuel economy standard (in miles per gallon) |
|---|---|
| 1978 | 18.0. |
| 1979 | 19.0. |
| 1980 | 20.0. |
| 1981 | Determined by Secretary under paragraph (3) of this subsection. |
| 1982 | Determined by Secretary under paragraph (3) of this subsection. |
| 1983 | Determined by Secretary under paragraph (3) of this subsection. |
| 1984 | Determined by Secretary under paragraph (3) of this subsection. |
| 1985 and thereafter | 27.5. |

(2) Not later than January 15 of each year, beginning in 1977, the Secretary shall transmit to each House of Congress, and publish in the Federal Register, a review of average fuel economy standards under this subchapter. The review required to be transmitted not later than January 15, 1979, shall include a comprehensive analysis of the program required by this subchapter. Such analysis shall include an assessment of the ability of manufacturers to meet the average fuel economy standard for model year 1985 as specified in paragraph (1) of this subsection, and any legislative recommendations the Secretary or the EPA Administrator may have for improving the program required by this suchapter.

(3) Not later than July 1, 1977, the Secretary shall prescribe, by rule, average fuel economy standards for passenger automobiles manufactured in each of the model years 1981 through 1984. Any such standard shall apply to each manufacturer (except as provided in subsection (c) of this section), and shall be set for each such model year at a level which the Secretary determines (A) is the maximum feasible average fuel economy level, and (B) will result in steady progress toward meeting the average fuel economy standard established by or pursuant to this subsection for model year 1985.

(4) The Secretary may, by rule, amend the average fuel economy standard specified in paragraph (1) for model year 1985, or for any subsequent model year, to a level which he determines is the maximum feasible average fuel economy level for such model year, except that any amendment which has the effect of increasing an average fuel economy standard to a level in excess of 27.5 miles per gallon, or of decreasing any such standard to a level below 26.0 miles per gallon, shall be submitted to the Congress in accordance with section 551 of the Energy Policy and Conservation Act [42 U.S.C. 6421], and shall not take effect if either House of the Congress disapproves such amendment in accordance with the procedures specified in such section.

(5) For purposes of considering any modification which is submitted to the Congress under paragraph (4), the 5 calendar days specified in section 551(f)(4)(A) of the Energy Policy and Conservation Act [42 U.S.C. 6421(f)(4)(A)] shall be lengthened to 20 calendar days, and the 15 calendar days specified in section 551(c) and (d) of such Act [42 U.S.C. 6421(c) and (d)] shall be lengthened to 60 calendar days.

(b) **Standards for other than passenger automobiles**

The Secretary shall, by rule, prescribe average fuel economy standards for automobiles which are not passenger automobiles and which are manufactured by any manufacturer in each model year which begins more than 30 months after December 22, 1975. Such rules may provide for separate standards for different classes of such automobiles (as determined by the Secretary), and such standards shall be set at a level which the Secretary determines is the maximum feasible average fuel economy level which such manufacturers are able to achieve in each model year to which this subsection applies. Any standard applicable to a model year under this subsection shall be prescribed at least 18 months prior to the beginning of such model year.

(c) **Exemptions for manufacturers of limited number of cars**

(1) On application of a manufacturer who manufactured (whether or not in the United States) fewer than 10,000 passenger automobiles in the second model year preceding the model year for which the application is made, the Secretary may, by rule, exempt such manufacturer from subsection (a) of this section. An application for such an exemption shall be submitted to the Secretary, and shall contain such information as the Secretary may require by rule. Such exemption may only be granted if the Secretary determines that the average fuel economy standard otherwise applicable under subsection (a) of this section is more stringent than the maximum feasible average fuel economy level which such manufacturer can attain. The Secretary may not issue exemptions with respect to a model year unless he establishes, by rule, alternative average fuel economy standards for passenger automobiles manufactured by manufacturers which receive exemptions under this subsection. Such standards may be established for an individual manufacturer, for all automobiles to which this subsection applies, or for such classes of such automobiles as the Secretary may define by rule. Each such standard shall be set at a level which the Secretary determines is the maximum feasible average fuel economy level for the manufacturers to which the standard applies. An exemption under this subsection shall apply to a model year only if the manufacturer manufactures (whether or not in the United States) fewer than 10,000 passenger automobiles in such model year.

(2) Any manufacturer may elect in any application submitted under paragraph (1) to have the applications for, and administrative determinations regarding, exemptions and alternative average fuel economy standards be consolidated for two or more of the model years after model year 1980 and before model year 1986. The Secretary may grant an exemption and set an alternative standard or standards for all model years covered by such application.

**(d) Application for modification of standards**

(1) Any manufacturer may apply to the Secretary for modification of an average fuel economy standard applicable under subsection (a) of this section to such manufacturer for model year 1978, 1979, or 1980. Such application shall contain such information as the Secretary may require by rule, and shall be submitted to the Secretary within 24 months before the beginning of the model year for which such modification is requested.

(2)(A) If a manufacturer demonstrates and the Secretary finds that—

(i) a Federal standards fuel economy reduction is likely to exist for such manufacturer for the model year to which the application relates, and

(ii) such manufacturer applied a reasonably selected technology,

the Secretary shall, by rule, reduce the average fuel economy standard applicable under subsection (a) of this section to such manufacturer by the amount of such manufacturer's Federal standards fuel economy reduction, rounded off to the nearest one-tenth mile per gallon (in accordance with rules of the Secretary). To the maximum extent practicable, prior to making a finding under this paragraph with respect to an application, the Secretary shall request, and the EPA Administrator shall supply, test results collected pursuant to section 2003(d) of this title for all automobiles covered by such application.

(B)(i) If the Secretary does not find that a Federal standards fuel economy reduction is likely to exist for a manufacturer who filed an application under paragraph (1), he shall deny the application of such manufacturer.

(ii) If the Secretary—

(I) finds that a Federal standards fuel economy reduction is likely to exist for a manufacturer who filed an application under paragraph (1), and

(II) does not find that such manufacturer applied a reasonably selected technology,

the average fuel economy standard applicable under subsection (a) of this section to such manufacturer shall, by rule, be reduced by an amount equal to the Federal standards fuel economy reduction which the Secretary finds would have resulted from the application of a reasonably selected technology.

(3) For purposes of this subsection:

(A) The term "reasonably selected technology" means a technology which the Secretary determines it was reasonable for a manufacturer to select, considering (i) the Nation's need to improve the fuel economy of its automobiles, and (ii) the energy savings, economic costs, and lead-time requirements associated with alternative technologies practicably available to such manufacturer.

(B) The term "Federal standards fuel economy reduction" means the sum of the applicable fuel economy reductions determined under subparagraph (C).

(C) The term "applicable fuel economy reduction" means a number of miles per gallon equal to—

(i) the reduction in a manufacturer's average fuel economy in a model year which results from the application of a category of Federal standards applicable to such model year, and which would not have occurred had Federal standards of such category applicable to model year 1975 remained the only standards of such category in effect, minus

(ii) 0.5 mile per gallon.

(D) Each of the following is a category of Federal standards;[1]

(i) Emissions standards under section 202 of the Clean Air Act [42 U.S.C. 7521] and emissions standards applicable by reason of section 209(b) of such Act [42 U.S.C. 7543(b)].

(ii) Motor vehicle safety standards under the National Traffic and Motor Vehicle Safety Act of 1966 [15 U.S.C. 1381 et seq.].

(iii) Noise emission standards under section 6 of the Noise Control Act of 1972 [42 U.S.C. 4905].

(iv) Property loss reduction standards under subchapter I of this chapter.

(E) In making the determination under this subsection, the Secretary (in accordance with such methods as he shall prescribe by rule) shall assume a production mix for such manufacturer which would have achieved the average fuel economy standard for such model year had standards described in subparagraph (D) applicable to model year 1975 remained the only standards in effect.

(4) The Secretary may, for the purposes of conducting a proceeding under this subsection, consolidate one or more applications filed under this subsection.

**(e) Determination of maximum feasible average fuel economy**

For purposes of this section, in determining maximum feasible average fuel economy, the Secretary shall consider—

(1) technological feasibility;

(2) economic practicability;

(3) the effect of other Federal motor vehicle standards on fuel economy; and

(4) the need of the Nation to conserve energy.

For purposes of this subsection, the Secretary shall not consider the fuel economy of alcohol powered automobiles or natural gas powered automobiles, and the Secretary shall consider dual energy automobiles and natural gas dual energy automobiles to be operated exclusively on gasoline or diesel fuel.

**(f) Amendment of average fuel economy standards**

(1) The Secretary may, by rule, from time to time, amend any average fuel economy standard prescribed under subsection (a)(3), (b), or (c) of this section, so long as such standard, as amended, meets the requirements of subsection (a)(3), (b), or (c) of this section, as the case may be.

(2) Any amendment prescribed under this section which has the effect of making any aver-

---

[1] So in original. The semicolon probably should be a colon.

age fuel economy standard more stringent shall be—
(A) promulgated, and
(B) if required by paragraph (4) of subsection (a) of this section, submitted to the Congress,

at least 18 months prior to the beginning of the model year to which such amendment will apply.

(g) Exemption of emergency vehicles from fuel economy standards

(1) At the election of any manufacturer, the fuel economy of any emergency vehicle shall not be taken into account in applying any fuel economy standard prescribed by or under subsection (a), (b), or (c) of this section. Any manufacturer electing to have the provisions of this subsection shall provide written notice of that election to the Secretary and to the Environmental Protection Agency Administrator.

(2) For purposes of paragraph (1), the term "emergency vehicle" means any automobile manufactured primarily for use—
(A) as an ambulance or combination ambulance-hearse,
(B) by the United States or by a State or local government for police or other law enforcement purposes, or
(C) for other emergency uses prescribed by the Secretary of Transportation by regulation.

(h) Application of other laws

Proceedings under subsection (a)(4) or (d) of this section shall be conducted in accordance with section 553 of title 5 except that interested persons shall be entitled to make oral as well as written presentations. A transcript shall be taken of any oral presentations.

(i) Consultation with Secretary of Energy; impact of proposed standards upon conservation goals; comments

The Secretary shall consult with the Secretary of Energy in carrying out his responsibilities under this section. The Secretary shall, before issuing any notice proposing under subsection (a), (b), (d), or (f) of this section, to establish, reduce, or amend an average fuel economy standard, provide the Secretary of Energy with a period of not less than ten days from the receipt of the notice during which the Secretary of Energy may, upon concluding that the proposed standard would adversely affect the conservation goals set by the Secretary of Energy, provide written comments to the Secretary concerning the impacts of the proposed standard upon those goals. To the extent that the Secretary does not revise the proposed standard to take into account any comments by the Secretary of Energy regarding the level of the proposed standard, the Secretary shall include the unaccommodated comments in the notice.

(j) Notification of Secretary of Energy; comments

The Secretary shall, before taking action on any final standard under this section or any modification of or exemption from such standard, notify the Secretary of Energy and provide such Secretary with a reasonable period of time to comment thereon.

(k) Adjustments or relief regarding standards for other than passenger automobiles

(1) On the petition of any manufacturer for any model year beginning after model year 1981 and before model year 1986, the Secretary may conduct an examination of the impacts on that manufacturer or a class of manufacturers of any standard under subsection (b) of this section applicable to 4-wheel drive automobiles. If after consideration of the results of that examination the Secretary finds in accordance with paragraph (2) that the manufacturer has demonstrated that such manufacturer or class of manufacturers would not otherwise be able to comply with such standard for that model year as it applies to 4-wheel drive automobiles without causing severe economic impacts, such as plant closures or reduction in employment in the United States related to motor vehicle manufacturing, the Secretary shall, by order, make an adjustment or otherwise provide relief regarding—
(A) the manner by which the average fuel economy of that manufacturer or class of manufacturers is calculated for purposes of that standard as it applies to 4-wheel drive automobiles, or
(B) other aspects regarding the application of that standard to the manufacturer or class of manufacturers with respect to such automobiles to the extent consistent with the provisions of this subchapter.

(2) Any finding by the Secretary under paragraph (1) shall be made (A) after notice and a reasonable opportunity for written or oral comment, and (B) after consideration of the benefits available under the amendments made by the Automobile Fuel Efficiency Act of 1980.

(3) The authority of the Secretary under this subsection to make any adjustment or provide other relief shall not be effective for any model year after model year 1985.

(4) The Secretary shall notify the Congress of any adjustment or other relief provided under this subsection in the first annual report submitted to the Congress under section 2012 of this title after the order is issued providing for that adjustment or relief.

(5)(A) Any final decision of the Secretary under this subsection shall be made, and notice thereof published in the Federal Register, not later than 120 days after the date of the petition involved. The Secretary may extend such period to a specified date if the Secretary publishes notice thereof in the Federal Register, together with the reasons for such extension. Any such decision by the Secretary shall become final 30 days after the publication of the notice of final decision unless a petition for judicial review is filed under subparagraph (B).

(B) Any person adversely affected by such a decision may, not later than 30 days after publication of notice of such decision, file a petition for review of such decision with the United States Court of Appeals for the District of Columbia or for the circuit in which such person resides, or in which the principal place of business of such person is located. The United States court of appeals involved shall have ju-

risdiction to review such decision in accordance with section 706(2)(A) through (D) of title 5, and to affirm, remand, or set aside the decision of the Secretary. Except as otherwise provided in this subparagraph, section 2004(c) and (d) of this title shall apply to such review to the same extent and manner as it applies with respect to review of any rule prescribed under this section or section 2001, 2003, or 2006 of this title.

(6) The availability of any adjustment or other relief under this subsection shall not be taken into account in prescribing standards under subsection (b) of this section.

(*l*) **Credits for exceeding average fuel economy standards**

(1)(A) For purposes of this subchapter, credits under this subsection shall be considered to be available to any manufacturer upon the completion of the model year in which such credits are earned under subparagraph (B) unless under subparagraph (C) the credits are made available for use at a time prior to the model year in which earned.

(B) Whenever the average fuel economy of the passenger automobiles manufactured by a manufacturer in a particular model year exceeds an applicable average fuel economy standard established under subsection (a) or (c) of this section (determined by the Secretary without regard to any adjustment under subsection (d) of this section or any credit under this subsection), such manufacturer shall be entitled to a credit, calculated under subparagraph (C),[2] which—

　(i) shall be available to be taken into account with respect to the average fuel economy of that manufacturer for any of the three consecutive model years immediately prior to the model year in which such manufacturer exceeds such applicable average fuel economy standard, and

　(ii) to the extent that such credit is not so taken into account pursuant to clause (i), shall be available to be taken into account with respect to the average fuel economy of that manufacturer for any of the three consecutive model years immediately following the model year in which such manufacturer exceeds such applicable average fuel economy standard.

(C)(i) At any time prior to the end of any model year, a manufacturer which has reason to believe that its average fuel economy for passenger automobiles will be below such applicable standard for that model year may submit a plan demonstrating that such manufacturer will earn sufficient credits under subparagraph (B) within the next 3 model years which when taken into account would allow the manufacturer to meet that standard for the model year involved.

(ii) Such credits shall be available for the model year involved subject to—

　(I) the Secretary approving such plan; and
　(II) the manufacturer earning such credits in accordance with such plan.

(iii) The Secretary shall approve any such plan unless the Secretary finds that it is unlikely that the plan will result in the manufacturer earning sufficient credits to allow the manufacturer to meet the standard for the model year involved.

(iv) The Secretary shall provide notice to any manufacturer in any case in which the average fuel economy of that manufacturer is below the applicable standard under subsection (a) or (c) of this section, after taking into account credits available under subparagraph (B)(i), and afford the manufacturer a reasonable period (of not less than 60 days) in which to submit a plan under this subparagraph.

(D) The amount of credit to which a manufacturer is entitled under this paragraph shall be equal to—

　(i) the number of tenths of a mile per gallon by which the average fuel economy of the passenger automobiles manufactured by such manufacturer in the model year in which the credit is earned pursuant to this paragraph exceeds the applicable average fuel economy standard established under subsection (a) or (c) of this section, multiplied by

　(ii) the total number of passenger automobiles manufactured by such manufacturer during such model year.

(E) The Secretary shall take credits into account for any model year on the basis of the number of tenths of a mile per gallon by which the manufacturer involved was below the applicable average fuel economy standard for that model year and the volume of passenger automobiles manufactured that model year by the manufacturer. Credits once taken into account for any model year shall not thereafter be available for any other model year. Prior to taking any credit into account, the Secretary shall provide the manufacturer involved with written notice and reasonable opportunity to comment thereon.

(2) Credits for manufacturers of automobiles which are not passenger automobiles shall be earned and be available to be taken into account for model years in which the average fuel economy of such class of automobiles is below the applicable average fuel economy standard established under subsection (b) of this section to the same extent and in the same manner as provided for under paragraph (1). Not later than 60 days after October 10, 1980, the Secretary shall prescribe regulations to carry out the provisions of this paragraph.

(3) Whenever a civil penalty has been assessed and collected under section 2008 of this title from a manufacturer who is entitled to a credit under this subsection, the Secretary of the Treasury shall refund to such manufacturer the amount of the civil penalty so collected to the extent that penalty is attributable to credits available under this subsection.

(4) The Secretary may prescribe rules for purposes of carrying out the provisions of this subsection.

(Pub. L. 92-513, title V, § 502, as added Pub. L. 94-163, title III, § 301, Dec. 22, 1975, 89 Stat. 902, and amended Pub. L. 95-91, title III, § 305, Aug. 4, 1977, 91 Stat. 580; Pub. L. 96-425, §§ 3(a)(1), 5, 6(b), 7, 8(c), (d), Oct. 10, 1980, 94

---

[2] So in original. Probably should be "subparagraph (D),".

Stat. 1821, 1825, 1826, 1828; Pub. L. 100-494, § 6(c), Oct. 14, 1988, 102 Stat. 2452.)

REFERENCES IN TEXT

The National Traffic and Motor Vehicle Safety Act of 1966, referred to in subsec. (d)(3)(D)(ii), is Pub. L. 89-563, Sept. 9, 1966, 80 Stat. 718, as amended, which is classified to chapter 38 (§ 1381 et seq.) of this title. For complete classification of this Act to the Code, see Short Title note set out under section 1381 of this title and Tables.

The Automobile Fuel Efficiency Act of 1980, referred to in subsec. (k)(2), is Pub. L. 96-425, Oct. 10, 1980, 94 Stat. 1821, which amended sections 1901, 2001 to 2003, 2005, 2007, 2008, and 2012 of this title, and enacted provisions set out as notes under sections 1901, 2001, and 2002 of this title. For complete classification of this Act to the Code, see Short Title note set out under section 1901 of this title and Tables.

CODIFICATION

"This subchapter", referred to in subsecs. (a)(2) and (*l*)(1)(A), was in the original "this part", meaning former part A, "Automotive Fuel Economy", of this subchapter, which designation, the only part designation appearing in the subchapter, was struck out by section 8(a)(3) of Pub. L. 96-425.

AMENDMENTS

1988—Subsec. (e). Pub. L. 100-494 inserted at end "For purposes of this subsection, the Secretary shall not consider the fuel economy of alcohol powered automobiles or natural gas powered automobiles, and the Secretary shall consider dual energy automobiles and natural gas dual energy automobiles to be operated exclusively on gasoline or diesel fuel."

1980—Subsec. (b). Pub. L. 96-425, § 8(c), substituted "and such standards shall be set" for "and shall be set".

Subsec. (c). Pub. L. 96-425, § 3(a)(1), designated existing provisions as par. (1) and added par. (2).

Subsec. (d)(3)(E). Pub. L. 96-425, § 8(d), substituted "under this subsection" for "under this subparagraph".

Subsecs. (g) to (j). Pub. L. 96-425, § 7, added subsec. (g) and redesignated former subsecs. (g) to (i) as (h) to (j), respectively.

Subsec. (k). Pub. L. 96-425, § 5, added subsec. (k).

Subsec. (*l*). Pub. L. 96-425, § 6(b), added subsec. (*l*).

1977—Subsecs. (h), (i). Pub. L. 95-91 added subsecs. (h) and (i).

EFFECTIVE DATE OF 1980 AMENDMENT

Section 6(d) of Pub. L. 96-425 provided that: "Under such regulations as the Secretary of Transportation shall prescribe, the amendments made by this section [enacting subsec. (*l*) of this section and amending sections 2007 and 2008 of this title] shall apply to the 3 model years preceding the model year during which this Act is enacted."

Amendment by sections 3(a)(1), 5, 7, 8(c), (d) of Pub. L. 96-425 effective Oct. 10, 1980, see section 9 of Pub. L. 96-425, set out as a note under section 2001 of this title.

AMENDMENT OF CERTAIN APPLICATIONS FILED FOR MODEL YEAR 1981

Section 3(a)(2) of Pub. L. 96-425 provided that any application filed for model year 1981 under 15 U.S.C. 2002(c) before Oct. 10, 1980, could be amended by the applicant to make the election allowed under the amendment made by paragraph (1) [amending 15 U.S.C. 2002(c)] and have such application apply for the model years covered by the election, and that additional information could not be required in connection with such application for the years covered by such election except information which the Secretary of Transportation specifically requested.

REVIEW BY SECRETARY OF EXEMPTION REQUIREMENTS AND PROCEDURES; NOTIFICATION OF CONGRESS

Section 3(a)(3) of Pub. L. 96-425 required Secretary of Transportation to review the requirements and procedures established pursuant to 15 U.S.C. 2002(c)(1) as soon as practicable after Oct. 10, 1980, modify such requirements and procedures to maximum extent practicable in order to further reduce administrative burdens on such applicants and the Secretary, expedite determinations regarding such applications, and notify Congress of the review and actions taken or to be taken in the first annual report to Congress which is made under 15 U.S.C. 2012 after completion of such review.

SECTION REFERRED TO IN OTHER SECTIONS

This section is referred to in sections 2001, 2003, 2004, 2005, 2007, 2008, 2010, 2013 of this title; title 26 section 6427.

§ 2003. Calculation of average fuel economy

(a) Method of calculation

(1) Average fuel economy for purposes of section 2002(a) and (c) of this title shall be calculated by the EPA Administrator by dividing—

(A) the total number of passenger automobiles manufactured in a given model year by a manufacturer, by

(B) a sum of terms, each term of which is a fraction created by dividing—

(i) the number of passenger automobiles of a given model type manufactured by such manufacturer in such model year, by

(ii) the fuel economy measured for such model type.

(2) Average fuel economy for purposes of section 2002(b) of this title shall be calculated in accordance with rules of the EPA Administrator.

(3) In the event that a manufacturer manufactures electric vehicles, as defined in section 2012(b)(2) of this title, the average fuel economy will be calculated under subsections (a)(1) and (2) of this section to include equivalent petroleum based fuel economy values for various classes of electric vehicles in the following manner:

(A) The Secretary of Energy will determine equivalent petroleum based fuel economy values for various classes of electric vehicles. Determination of these fuel economy values will take into account the following parameters:

(i) the approximate electrical energy efficiency of the vehicles considering the vehicle type, mission, and weight;

(ii) the national average electricity generation and transmission efficiencies;

(iii) the need of the Nation to conserve all forms of energy, and the relative scarcity and value to the Nation of all fuel used to generate electricity;

(iv) the specific driving patterns of electric vehicles as compared with those of petroleum fueled vehicles.

(B) The Secretary of Energy will propose equivalent petroleum based fuel economy values within four months of enactment of the Act. Final promulgation of the values is

**Attachment 2:**

**15 U.S.C. § 2013 (1988)**

of this title by section 4(a)(1) of the Automobile Fuel Efficiency Act of 1980—

(A) achieves the purposes of that Act and this subchapter, including whether such amendment has promoted employment in the United States related to motor vehicle manufacturing,

(B) has not caused undue harm to the motor vehicle manufacturing sector in the United States, and

(C) has permitted any manufacturer that has assembled passenger automobiles which are considered domestically manufactured under section 2003(b)(2)(E) of this title to thereafter assemble in the United States passenger automobiles of the same model type which have less than 75 percent of their value added in the United States or Canada, together with the reasons for such action.

(2) The Secretary shall include the results of such examination in each annual report that is made to the Congress under subsection (a) of this section more than 180 days after an exemption has been granted under section 2003(b)(3) of this title, or transmit the results of such examination directly to the Congress before such a report in any case in which circumstances so warrant.

(Pub. L. 92-513, title V, §512, as added Pub. L. 94-163, title III, §301, Dec. 22, 1975, 89 Stat. 916, and amended Pub. L. 96-425, §4(a)(2), Oct. 10, 1980, 94 Stat. 1823.)

REFERENCES IN TEXT

The Automobile Fuel Efficiency Act of 1980 and that Act, referred to in subsec. (c)(1), is Pub. L. 96-425, Oct. 10, 1980, 94 Stat. 1821, which amended sections 1901, 2001, to 2003, 2005, 2007, 2008, and 2012 of this title and enacted provisions set out as notes under sections 1901, 2001, and 2002 of this title. Section 4(a)(1) of the Act enacted section 2003(b)(3) of this title. For complete classification of this Act to the Code, see Short Title note set out under section 1901 of this title and Tables.

CODIFICATION

"This subchapter", referred to in subsec. (b)(1), was in the original "this part", meaning former part A, "Automotive Fuel Economy", of this subchapter, which designation, the only part designation appearing in the subchapter, was struck out by section 8(a)(3) of Pub. L. 96-425.

"Section 2003(b)(3) of this title", referred to in subsec. (c)(2), was in the original "section 503(b)(3) of this subsection" which has been translated to reflect the probable intent of Congress.

AMENDMENTS

1980—Subsec. (c). Pub. L. 96-425 added subsec. (c).

EFFECTIVE DATE OF 1980 AMENDMENT

Amendment by Pub. L. 96-425 effective Oct. 10, 1980, see section 9 of Pub. L. 96-425, set out as a note under section 2001 of this title.

SECTION REFERRED TO IN OTHER SECTIONS

This section is referred to in sections 2002, 2003, 2512 of this title.

§ 2013. Manufacturing incentives for automobiles

(a) Alcohol powered automobile

If a manufacturer manufactures any model type of alcohol powered automobile, the fuel economy measured for that model type shall be based on the fuel content of the alcohol used to operate such automobile. For purposes of this section, a gallon of alcohol used to operate such automobile shall be considered to contain 15 one-hundredths of a gallon of fuel.

(b) Dual energy automobile

If a manufacturer manufactures any model type of dual energy automobile, the fuel economy measured for that model type shall be measured by the EPA Administrator by dividing 1.0 by the sum of—

(1) 0.5 divided by the fuel economy as measured under section 2003(d) of this title while operating such model type on gasoline or diesel fuel; and

(2) 0.5 divided by the fuel economy as measured under subsection (a) of this section while operating such model type on alcohol.

(c) Natural gas powered automobile

If a manufacturer manufactures any model type of natural gas powered automobile, the fuel economy measured for that model type shall be based on the fuel content of the natural gas used to operate such automobile. For purposes of this section, 100 cubic feet of natural gas shall be considered to contain 0.823 gallons equivalent of natural gas, and a gallon equivalent of natural gas shall be considered to have a fuel content of 15 one-hundredths of a gallon of fuel.

(d) Natural gas dual energy automobile

If a manufacturer manufactures any model type of natural gas dual energy automobile, the fuel economy measured for that model type shall be measured by the EPA Administrator by dividing 1.0 by the sum of—

(1) 0.5 divided by the fuel economy as measured under section 2003(d) of this title while operating such model type on gasoline or diesel fuel; and

(2) 0.5 divided by the fuel economy as measured under subsection (c) of this section while operating such model type on natural gas.

(e) Fuel economy calculation

The EPA Administrator shall calculate, subject to the provisions of this section, the manufacturer's average fuel economy under section 2003(a)(1) and (2) of this title by including as the denominator of the term for each model type of alcohol powered automobile, dual energy automobile, natural gas powered automobile, or natural gas dual energy automobile, the fuel economy measured pursuant to subsections (a) through (d) of this section.

(f) Applicability

(1) Except as otherwise provided in this subsection, subsections (b) and (d) of this section shall apply only to automobiles manufactured in model year 1993 through model year 2004. Subsections (a) and (c) of this section shall apply only to automobiles manufactured after model year 1992.

(2)(A) Not later than September 30, 2000, the Secretary, in consultation with the Secretary of Energy and the EPA Administrator, shall complete and submit to the Committees on Com-

merce, Science, and Transportation and Governmental Affairs of the Senate, and the Committee on Energy and Commerce of the House of Representatives, a report containing the results of a study of the success of the policy contained in subsections (b) and (d) of this section, along with preliminary conclusions as to whether the application of such subsections should be extended for up to four additional model years. Such study and conclusions shall be prepared taking into consideration—

    (i) the availability to the public of alcohol powered automobiles, natural gas powered automobiles, and alternative fuels;
    (ii) energy conservation and security;
    (iii) environmental considerations; and
    (iv) other relevant factors.

  (B) The Secretary shall—
    (i) promulgate a rule to extend the applicability of subsections (b) and (d) of this section for 4 or fewer consecutive model years immediately after model year 2004; or
    (ii) publish a notice explaining the reasons for not promulgating such rule. Such rule or notice shall be promulgated before January 1, 2002.

Any such promulgated rule shall explain the basis on which any such extension has been granted.

**(g) Maximum increase**

(1)(A) For each of the model years 1993 through 2004, for each category of automobiles the maximum increase in average fuel economy for a manufacturer attributable to dual energy automobiles and natural gas dual energy automobiles shall be 1.2 miles per gallon.

(B) If the application of subsections (b) and (d) of this section is extended under subsection (f)(2) of this section, for each category of automobiles the maximum increase in average fuel economy for a manufacturer for each of the model years 2005 through 2008 attributable to dual energy automobiles and natural gas dual energy automobiles shall be 0.9 miles per gallon.

(C) For purposes of applying subparagraph (A) or (B), the EPA Administrator shall compute the increase in a manufacturer's average fuel economy attributable to dual energy automobiles and natural gas dual energy automobiles by subtracting from the manufacturer's average fuel economy calculated under subsection (e) of this section the number equal to what the manufacturer's average fuel economy would be if it were calculated by the formula in section 2003(a)(1) and (2) of this title by including as the denominator for each model type of dual energy automobile or natural gas dual energy automobile the fuel economy when such automobiles are operated on gasoline or diesel fuel. If the increase attributable to dual energy automobiles and natural gas dual energy automobiles for any model year described in subparagraph (A) is more than 1.2 miles per gallon, the limitation in subparagraph (A) shall apply, and if the increase attributable to such automobiles for any model year described in subparagraph (B) is more than 0.9 miles per gallon, the limitation in subparagraph (B) shall apply.

(2)(A) Notwithstanding any other provision of this section, if the Secretary reduces the average fuel economy standard applicable to passenger automobiles for any model year below 27.5 miles per gallon, any increase in average fuel economy for passenger automobiles of more than 0.7 miles per gallon to which a manufacturer of dual energy passenger automobiles or natural gas dual energy passenger automobiles would otherwise be entitled in that year under this section shall be reduced by an amount equal to the amount of such reduction in the standard, except that such increase shall not be reduced to less than 0.7 miles per gallon.

(B) In carrying out section 2002(a)(4) and (f) of this title, the Secretary shall not consider the fuel economy of alcohol powered automobiles or natural gas powered automobiles, and the Secretary shall consider dual energy automobiles and natural gas dual energy automobiles to be operated exclusively on gasoline or diesel fuel.

**(h) Definitions**

(1) For purposes of this subchapter—
  (A) the term "alcohol" means a mixture containing 85 percent or more by volume methanol, ethanol, or other alcohols, in any combination;
  (B) the term "alcohol powered automobile" means an automobile designed to operate exclusively on alcohol;
  (C) the term "dual energy automobile" means an automobile—
    (i) which is capable of operating on alcohol and on gasoline or diesel fuel;
    (ii) which provides equal or superior energy efficiency, as calculated for the applicable model year during fuel economy testing for the Federal Government, while operating on alcohol as it does while operating on gasoline or diesel fuel;
    (iii) which, for model years 1993 through 1995, and, if the Administrator of the Environmental Protection Agency determines that an extension of this clause is warranted, for an additional period ending not later than the end of the last model year for which section 2013(b) and (d) of this title applies, provides equal or superior energy efficiency, as calculated for the applicable model year during fuel economy testing for the Federal Government, while operating on a mixture of alcohol and gasoline or diesel fuel containing exactly 50 percent gasoline or diesel fuel as it does while operating on gasoline or diesel fuel; and
    (iv) which, in the case of passenger automobiles, meets or exceeds the minimum driving range established pursuant to paragraph (2);

  (D) the term "natural gas dual energy automobile" means an automobile—
    (i) which is capable of operating on natural gas and on gasoline or diesel fuel;
    (ii) which provides equal or superior energy efficiency, as calculated for the applicable model year during fuel economy testing for the Federal Government, while

operating on natural gas as it does while operating on gasoline or diesel fuel; and

(iii) which, in the case of passenger automobiles, meets or exceeds the minimum driving range established pursuant to paragraph (2); and

(E) the term "natural gas powered automobile" means an automobile designed to operate exclusively on natural gas.

(2)(A) For purposes of the definitions in paragraphs (1)(C) and (D), the Secretary shall, within 18 months after October 14, 1988, establish by rule of general applicability for all manufacturers a minimum driving range which must be met by dual energy automobiles when operating on alcohol, and by natural gas dual energy automobiles when operating on natural gas, if such automobiles are to be considered dual energy automobliles or natural gas dual energy automobiles under this section. Subject to the provisions of this paragraph, the rule may be amended from time to time. Any determination of whether dual energy automobiles or natural gas dual energy automobiles meet the minimum driving range requirement under this paragraph shall be based on the combined EPA city/highway fuel economy as determined for average fuel economy purposes for such automobiles. The rule issued under this subparagraph shall apply only to dual energy automobiles and natural gas dual energy automobiles that are passenger automobiles.

(B)(i) The general rule established under subparagraph (A) shall allow the Secretary to determine that a specific model type or types may have a lower range than that established by the general rule, and shall allow a manufacturer to petition for a specific model type or types to have a lower range than that established by the general rule.

(ii) If, with respect to dual energy automobiles, the Secretary establishes under subparagraph (A) 200 miles as the generally applicable minimum driving range under this paragraph, clause (i) shall not apply to dual energy automobiles.

(C) Under no circumstances shall the general rule established under subparagraph (A) establish a minimum driving range of less than 200 miles for dual energy automobiles, nor shall the Secretary approve under the procedure referred to in subparagraph (B) a minimum driving range of less than 200 miles for dual energy automobiles.

(D) In establishing the general rule under subparagraph (A), and in taking any action under the procedure referred to in subparagraph (B), the Secretary shall take into account the purposes of the Alternative Motor Fuels Act of 1988 [42 U.S.C. 6374 et seq.], consumer acceptability, economic practicability, technology, environmental impact, safety, driveability, performance, and any other factors the Secretary considers relevant.

(Pub. L. 92-513, title V, § 513, as added Pub. L. 100-494, § 6(a), Oct. 14, 1988, 102 Stat. 2448.)

REFERENCES IN TEXT

The Alternative Motor Fuels Act of 1988, referred to in subsec. (h)(2)(D), is Pub. L. 100-494, Oct. 14, 1988, 102 Stat. 2441, which is classified principally to part H (§ 6374 et seq.) of subchapter III of chapter 77 of Title 42, The Public Health and Welfare. For complete classification of this Act to the Code, see Short Title of 1988 Amendment note set out under section 6201 of Title 42 and Tables.

STUDY ON RESIDENTIAL ENERGY PRICING

Section 9 of Pub. L. 100-494 provided that: "The Secretary of Energy, in consultation with the Secretary of Transportation, shall study and report to the Committees on Commerce, Science, and Transportation and Governmental Affairs of the Senate, and the Committee on Energy and Commerce of the House of Representatives, not later than December 1, 1989, on whether calculating the average fuel economy of vehicles as provided in this Act and the amendments made by this Act [see Tables for classification] is likely to result in a significant increase in the average price of home heating to residential consumers. Such report shall be updated and submitted to the Committees on Commerce, Science, and Transportation and Governmental Affairs of the Senate, and the Committee on Energy and Commerce of the Honse of Representatives, not later than December 1, 1994."

SECTION REFERRED TO IN OTHER SECTIONS

This section is referred to in section 2006 of this title.

SUBCHAPTER VI—THEFT PREVENTION

SUBCHAPTER REFERRED TO IN OTHER SECTIONS

This subchapter is referred to in section 1988 of this title.

§ 2021. Definitions

For purposes of this subchapter:

(1) The term "passenger motor vehicle" does not include any multipurpose passenger vehicle (including any vehicle commonly known as a "passenger van").

(2) The term "line" means a name which a manufacturer applies to a group of motor vehicle models of the same make which have the same body or chassis, or otherwise are similar in construction or design.

(3) The term "existing line" means any line introduced into commerce before the beginning of the 2-year period specified in section 2023(a)(1)(A) of this title.

(4) The term "new line" means any line introduced into commerce on or after the beginning of the 2-year period specified in section 2023(a)(1)(A) of this title.

(5) The term "first purchaser" means first purchaser for purposes other than resale.

(6) The term "covered major part" means any major part selected in accordance with sections 2022(d)(1)(B) and 2023 of this title for coverage by the vehicle theft prevention standard issued under section 2022 of this title.

(7) The term "major part" means—
  (A) the engine;
  (B) the transmission;
  (C) each door allowing entrance or egress to the passenger compartment;
  (D) the hood;
  (E) the grille;
  (F) each bumper;
  (G) each front fender;